797 P.2d 267

**Ben RUIZ, d/b/a West Heights Land Investments, Plaintiff–Appellee,**

v.

**Cyrus VARAN, individually, Morteza Jafari, individually and Three Springs Limited Partnership, Defendants–Appellants.**

No. 18484.

Supreme Court of New Mexico.

Aug. 23, 1990.

Threet & King, Martin E. Threet, David W. King, Albuquerque, for defendants-appellants.

Richard E. Norton, Corrales, for plaintiff-appellee.

## OPINION

MONTGOMERY, Justice.

This appeal concerns the measure of damages awarded to a property owner due to interference with his ability to use or dispose of a tract of undeveloped land. The trial court awarded nominal damages, but the owner sought substantial damages based on a discount factor applied to the value of the property before the interference. The owner presented no evidence of actual loss in value or of increased costs resulting from the interference. We hold that the property owner's damages cannot be quantified in this way and that the trial court did not abuse its discretion in awarding only nominal damages.

### I.

The property owner is one of the appellants, Three Springs Limited Partnership (Three Springs). In February 1984, the appellee, Ben Ruiz, recorded a notice of *lis pendens* in Bernalillo County, New Mexico, giving notice of his suit against Three Springs to recover a real estate commission claimed to be due on a transaction between Three Springs and the City of Albuquerque relating to a large tract of undeveloped land in Albuquerque. Ruiz had brought an action in the Bernalillo County District Court for breach of contract and had recorded the notice four months after commencing the lawsuit. In due course Three Springs counterclaimed, charging that the *lis* constituted an abuse of process and that the partnership was damaged due to its inability to dispose of its property.[1]

The trial court conducted a hearing on the merits and found that the *lis pendens* had been in place from the date of its filing, February 6, 1985, until it had been quashed by a court order on November 3, 1987—a period of about thirty-three months. The court further found that the property in question had a "value of approximately $3,500,000 and was otherwise free and clear" when the *lis pendens* was filed; that a claim of title was never involved in the litigation between Ruiz and Three Springs; that "the only purpose the filing of the *lis pendens* served was to place a cloud upon the title * * * to force settlement of the claims of Mr. Ruiz," and that the filing was done with an ulterior motive. Finally, the court found that "[a]s a result of the filing of the Notice of Lis Pendens, Three Springs Limited Partnership was not able to obtain title insurance for the property, utilize the property for loan collateral, or sell the property."

As to damages, the trial court found that Three Springs had suffered "nominal damages" as a result of the filing of the notice of *lis pendens*. It therefore awarded Three Springs only $5,000. A Three Springs partner had testified that the partnership's damages amounted to "around a million dollars," and an expert witness had expressed the opinion that the damages equaled $471,300. The expert based his figure on the value of the property discounted by a composite discount rate, derived principally from the interest rate on government bonds and bills for a two-year period during which the *lis* was in effect.

1. In his reply to Three Springs' counterclaim, Ruiz defended in part on the theory that his filing of the *lis pendens* was absolutely privileged as a court pleading. *See Superior Constr., Inc. v. Linnerooth,* 103 N.M. 716, 712 P.2d 1378 (1986) (filing of *lis pendens* absolutely privileged and cannot support an action for slander of title). This case does not raise, and we express no opinion on, the question whether a counterclaim for abuse of process or slander of title can properly be filed in response to the complaint on which the *lis pendens* is based. *But see Richardson v. Rutherford,* 109 N.M. 495, 500–03, 787 P.2d 414, 419–22 (1990) (counterclaim for abuse of process permitted in response to improper complaint).

Three Springs offered no other evidence of damage.

On appeal, Three Springs attacks the trial court's award of damages as inadequate. It maintains that the testimony of the partner and the expert witness, which was uncontradicted, was binding on the trial court. It says that the trial court should have awarded between $471,000 and one million dollars based on that testimony. Alternatively, it asserts that damages equal to the value of the property times the then authorized "legal" rate of interest—15 percent per annum—for the thirty-three month period should have been awarded. We reject Three Springs' position and, after briefly reviewing the law of damages for the torts of abuse of process and slander of title, hold that the trial court was not bound to accept Three Springs' evidence because its theory was defective and its proof was inadequate.

## II.

■ Our decisions not only recognize a cause of action for the tort of abuse of process, *Farmers Gin Co. v. J.A. Ward,* 73 N.M. 405, 389 P.2d 9 (1964); we have specifically said that the wrongful filing of a notice of *lis pendens* may support an action for abuse of process. *Superior Constr., Inc. v. Linnerooth,* 103 N.M. 716, 720, 712 P.2d 1378, 1382 (1986) (dictum). The elements of the tort were spelled out in *Zamora v. Creamland Dairies, Inc.,* 106 N.M. 628, 747 P.2d 923 (Ct.App.1987):

New Mexico case law requires three elements for an abuse of process claim: (1) the existence of an ulterior motive; (2) an act in the use of process which would not be proper in the regular prosecution of the charge; and (3) the plaintiff must suffer damages (there must be an unlawful interference with the plaintiff's person or property).

*Id.* at 635, 747 P.2d at 930. *Cf. Richardson v. Rutherford,* 109 N.M. 495, 501–2, 787 P.2d 414, 420–21 (1990); *Hertz Corp. v. Paloni,* 95 N.M. 212, 215, 619 P.2d 1256, 1259 (Ct.App.1980). In the instant case, Three Springs proved all elements of the tort to the satisfaction of the trier of fact: Ruiz's ulterior motive of forcing settlement of his claims against the partnership; his filing of the *lis pendens,* which would not have been proper in the regular prosecution of his claim for a commission; and interference with Three Springs' ability to sell or secure a loan on its property.

■ The question on this appeal relates to the measure of damages for the tort which the trial court found. The measure of damages for an abuse of process in the case of real property is no different from that for other property torts. The filing of the *lis pendens* is analogous to:

the wrongful *levy* of an attachment writ, as by seizure of exempt property not belonging to the defendant, [so that] the measure of damages would be the same as in any other cases of trespass or tortious interference with the owner's possession. If the property is returned to and accepted by the owner, the damages for the detention would include the value of its use, plus any depreciation caused by the defendant, and any reasonable and necessary expense in securing repossession.

C. McCormick, *Handbook on the Law of Damages* § 109, at 385–86 (1935) (damages for abuse of process). This accords with what Professors Prosser and Keeton say in their discussion of damages for abuse of process—that is, that compensation for loss of use can be a measure of damages. They also indicate that what amounts to nominal damages can be assessed "to vindicate the right [interfered with] itself and to maintain the integrity of the judicial process"— even when "no property is taken at all and where the attempted extortion was wholly unsuccessful." W.P. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts* § 121, at 900 (5th ed. 1984) ("Abuse of Process"). Thus an abuse of process which interferes with a property right is viewed like a trespass to land.

■ Under the facts of this case, the tort committed by Ruiz is also akin to slander

of title,[2] a form of tort that Professors Prosser and Keeton call by the generalized name, "injurious falsehood." *Prosser & Keeton, supra,* § 128. "For the most part the injurious falsehood cases have been concerned with aspersions upon the title to property * * *. Any type of legally protected property interest that is capable of being sold may be the subject of disparagement, including land * * *." *Id.* at 965. "The gist of the tort is the interference with the prospect of sale or some other advantageous relation." *Id.* at 966. To establish the existence of the tort of injurious falsehood, among other things, "[t]he plaintiff must prove special damages in the form of pecuniary loss." *Id.* at 967. "The special damage rule requires the plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales." *Id.* at 971. In their note to this point, Prosser and Keeton state that

> In slander of title cases "impaired vendibility" of the land is sometimes stated as the special damage for which recovery is permitted. The phrase is ambiguous and may mean (1) the plaintiff sold the land at a lower price because of the falsehood; (2) the plaintiff sold the land at greater effort, expense or time because of the falsehood; or (3) the land's value has dropped on the market * * *. The chief characteristic of special damages is a realized loss. Thus loss of specific contracts to purchase may be required proof.

*Id.,* note 3. This has meant that, as a rule, "the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived," although "[t]he whole modern tendency is away from any such arbitrary rule." *Id.* at 972.

The measure of damages for a real property tort can be found in our Uniform Jury Instructions, SCRA 1986, 13–1802 and 13–1819. The first of these in-structions, on the general measure of damages, is intended to provide for an "amount of money which will reasonably and fairly compensate" for an injury as established by evidence. Ordinarily this is accomplished by instructing the jury to determine "what was the value of the property immediately before the occurrence and immediately after the occurrence. The difference between these two figures is the legal measure of damages to real property." SCRA 1986, 13–1819. *See also Duke City Lumber Co. Inc. v. Terrel,* 88 N.M. 299, 540 P.2d 229 (1975) (difference between "before and after" fair market values measures damage to business). But nothing in our case law precludes substituting a "lost use" measure for the standard "before and after" measure set out in UJI 13–1819 where such a measure represents fair and reasonable compensation. *See Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980) (damages awarded for inability to discharge loan due to breach of contract, interest payments made while attempting to locate buyer for property, and lost use value of investment capital). In sum, "before and after" diminution in value, compensation for lost use, and even nominal damages of the kind associated with a trespass may be awarded, depending on the proof offered to establish and quantify the harm.

These principles were applied in a Colorado case involving the wrongful filing of a *lis pendens, Johnson v. Benson,* 725 P.2d 21 (Colo.App.1986). There the party seeking recovery on theories of abuse of process and slander of title for the unjustified filing of a *lis pendens* provided

> no evidence that any actual sale had been frustrated by the *lis pendens,* no evidence of the identity of persons failing to purchase nor any explanation why it was not possible to name them, no evidence of costs incurred in seeking to remove the *lis pendens,* and no evidence from which the court could infer that market conditions in the year here in question were similar to those in previous years so

---

**2.** *But see Linnerooth, supra,* note 1.

as to base any award analogous to recovery of lost profits in breach of contract. *Id.* at 26.

### III.

■ Difficulties similar to those facing the party who tried to prevail on a claim of abuse of process in *Johnson* beset Three Springs in attempting to adduce evidence which would permit quantification of its loss. It was confronted with the following facts. The property was tied up in litigation until 1988, a year beyond the time the *lis pendens* was lifted. The property was held for development in one or more subdivisions; it had no water and sewer service, and the partnership was precluded by this fact—which was unrelated to the filing of the *lis pendens*—from obtaining the approvals it needed to develop the land. There was no evidence that the partnership had lost any opportunity to sell the land before, during or after the lifting of the *lis pendens* due to the cloud on its title. There was no evidence that the value of the land at the end of 1987 had declined from its value in early 1985 when the *lis pendens* was filed. While there was evidence that the partnership could not borrow on the security of the property, there was no evidence of whether this inability gave rise to any financial loss to the partnership, such as increased interest costs from having to borrow on the strength of different collateral.

As a substitute for this lack of evidence, Three Springs attempted to establish that what it suffered was loss of use value. As mentioned above, a partner testified that he thought that the partnership suffered "around a million dollars" in damage due to the *lis pendens*. Three Springs' expert witness testified that, having studied the damages flowing from the "delay of utilization of real estate," it was his opinion that the partnership suffered $471,300 as a result of the *lis pendens*. According to Three Springs' brief, "no other testimony appears in the record concerning the damages suffered due to the forced immobility of the property," which we interpret to mean that no evidence was offered that Three Springs lost any specific amount of money as a result of any opportunity to use the property as collateral for any loan, or that any loss was incurred on account of lack of title insurance, or that there were specific lost sales, or that the property declined in value by a certain amount. Similarly, the record is devoid of evidence that the land was rented, or would have been rented or used in any way. There was no evidence of increased transaction costs incurred in trying to get a loan or title insurance.

What remains is the testimony of the partner and that of the expert witness, which Three Springs argues was binding on the trial court. But the estimate of the partner was not based on any realized loss, nor was it based on any actual lost opportunity, increased transaction costs, or anything else specific. We therefore conclude that it was not error for the court to disregard or disbelieve it.

The expert's estimate of loss was based on the property as if it were a liquid asset. His estimate treated undeveloped land as if it were cash that could be invested in treasury bills to return income. The basis for his "discounting" appears to have been an attempt to impute to the property owner a return in the form of the hypothetical interest that the property would have generated had it been invested in interest-bearing securities during the period in which the *lis pendens* was in effect. But the court could easily have concluded that the property was not liquid and generated no income, not because of the *lis pendens* but because, as Three Springs' partner said repeatedly, it was being held for development. For all that appears in the record, Three Springs might have had an unrealized return during the period the *lis pendens* was in effect; the property might well have substantially appreciated in value over this period. Expert testimony is not binding on the trier of facts, *Madrid v. University of California*, 105 N.M. 715, 718, 737 P.2d 74, 77 (1987), and we are not persuaded that the court erred in refusing to accept this measure of use value.

■ Three Springs cites *Wirth v. Commercial Resources, Inc.*, 96 N.M. 340, 630 P.2d 292 (Ct.App.1981), for the proposition that the lack of certainty which will prevent recovery of damages is uncertainty as to the fact of damages and not as to amount. In *Wirth,* a homeowner brought a fraud suit against land developers who sold land with assurances about availability of water. The court of appeals ruled that although lack of certainty about the fact of damages will prevent recovery, "Wirth proved he was entitled to damages, and the record shows that he presented sufficient evidence for the jury to determine the amount of compensation that was his due." 96 N.M. at 344, 630 P.2d at 296. This is distinguishable from the case before us. The homeowner in *Wirth* proved that he could not sell his house without water—it was valueless—and he proved how much money he had invested in the property based on the deception. Thus the *fact* of his damage was demonstrated by the difference between what he had spent on the property and what it was worth. This is the kind of fact that Three Springs failed to establish in this case—the fact that it had incurred *any* damage as a result of the *lis pendens.*

■ Three Springs also argues that the court erred in failing to award it damages computed by using the legal rate of interest instead of the expert's rate. It asserts, as an alternative to its expert's calculation, that it should be granted an amount equal to the legal rate, 15 percent, times the value of its $3,500,000 piece of land for the time that the *lis pendens* was in place, calculating that damages would then equal $1,443,750. Three Springs bases this argument on language in *Shaeffer v. Kelton, supra,* in which interest was granted on the basis of a specific award of damages in a judgment. But *Shaeffer* does not support the notion that interest can be awarded without evidence of damage, meaning some measurable amount of loss. In that case we noted that where the amount of damages is unliquidated, "interest may be allowed in the discretion of the court, if justice requires it, on the amount that would have been just compensation." 95

N.M. at 187, 619 P.2d at 1232 (quoting *Restatement of Contracts* § 337 (1932)). Not only is the award of interest a matter of discretion for the court, it is clear that the interest must be linked to some calculable amount of damage. Three Springs offers no support for the proposition that an award of interest as damages can be tied to the value of real property when no pecuniary loss in connection with that property has been shown.

## IV.

■ In this case the court awarded damages of $5,000, which it was permitted to do if the harm to be vindicated was for the abuse of process tort and no other actual damages were linked to the *lis pendens.* The court referred to this award as "nominal damages," which are defined as follows:

> Nominal damages are damages awarded for the infraction of a legal right, where the extent of the loss is not shown, or the right is not dependent upon loss or damage, as in the case of rights * * * to have one's material property undisturbed by direct invasion. The award of nominal damages is made as a judicial declaration that the plaintiff's right has been violated.

C. McCormick, *Handbook on the Law of Damages* § 20 (1935). They are awarded "merely as a recognition of some breach of duty owed by the defendant to the plaintiff and not as a measure of recompense for loss or detriment sustained." *Id.*

According to McCormick, some courts would not consider an award of $5,000 "nominal," even as compared to the amount of the claim involved. *Id.,* § 21. *See also Riley v. Shamel,* 249 Ark. 845, 847, 462 S.W.2d 228, 230 (1971) ($5,000 award substantial, not nominal). New Mexico case law states that nominal damages should be of a "trivial sum." *Stevens v. Mitchell,* 51 N.M. 411, 415, 186 P.2d 386, 389 (1947); *Christman v. Voyer,* 92 N.M. 772, 775, 595 P.2d 410, 413 (Ct.App.1979). While we do not hold that $5,000 is a trivial sum as a matter of law, here the party

liable for the award has not complained of the amount of damages—perhaps because he could have been faced with a large actual damage award if losses had been proven. We consider the award and amount of nominal damages to be a matter of discretion for the trial court. *Hagerman Irrigation Co. v. McMurry*, 16 N.M. 172, 113 P. 823 (1911). In this case we do not believe that the court abused its discretion. In the absence of an abuse of discretion or other error, we are required to affirm the trial court. *Coastal Plains Oil Co. v. Douglas*, 69 N.M. 68, 364 P.2d 131 (1961); *see also Powers v. Campbell*, 79 N.M. 302, 304, 442 P.2d 792, 794 (1968) (where supported by substantial evidence, award of damages in bench trial will not be set aside for inadequacy of amount unless it results from passion, prejudice, partiality, undue influence, corrupt motive, palpable error or mistaken measure of damages).

In essence, appellant proved to the satisfaction of the trial court that it had suffered some harm, if only in the form of having to go to court to have the *lis pendens* lifted. Because it did not prove anything else in connection with its damages, we affirm the judgment.

IT IS SO ORDERED.

BACA and WILSON, JJ., concur.