**LEON LTD.,** Leon Development Corporation and Richard J. Leon, Appellants,

v.

**ALBUQUERQUE COMMONS PARTNER-SHIP,** Albuquerque Uptown Partnership, Albuquerque Uptown Partnership II, Wagner & Brown, Cyril Wagner and Jack Brown, Appellees.

No. 08–92–00002–CV.

Court of Appeals of Texas, El Paso.

Aug. 25, 1993.

Marshall M. Searcy, Margaret A. Donahue, Locke Purnell Rain Harrell, Dallas, TX, for appellants.

Harper Estes, Lynch, Chappell & Alsup, Midland, TX for appellees.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## CORRECTED OPINION

KOEHLER, Justice.

The opinion dated July 21, 1993 is hereby withdrawn and the following is the opinion of this Court.

This is an appeal from a judgment notwithstanding the verdict of the jury in a suit brought by Appellees for breach of contract and fiduciary duties in which suit Appellants counterclaimed for breach of a prior oral contract. We affirm in part and reverse and render in part the judgment of the trial court.

## FACTUAL BACKGROUND

Richard J. Leon (Leon) had been involved in the leasing of real estate in Albuquerque, New Mexico since 1973. In 1975, he went out on his own and formed Leon Ltd. for the general purpose of providing commercial and industrial real estate services, including leasing office buildings, retail complexes and industrial buildings, property management of those kinds of property, development services, real estate sales and brokerage, and related services. Seven or eight years later, he formed Leon Management Corporation to handle the property management functions of his business. In late 1978, Leon became the exclusive broker on a tract of land located in Uptown Albuquerque, owned by the Archdiocese of Santa Fe of the Roman Catholic Church, on which was located St. Pius X High School (St. Pius tract) and which together with another contiguous tract (the LaMesa tract) was referred to as the Commons. In August 1979, he entered into a contract with the Church to do preliminary master development services on the tract. In 1983 at a time when he was no longer exclusive agent, Leon met Mike Bray, an employee of Wagner and Brown (W & B) [1]. At some point, Bray and W & B became interested in acquiring the St. Pius tract. During much of 1984, Bray and Leon met on various occasions to negotiate a lease of that tract between the Church and W & B. On December 31, 1984, a long term lease between the parties was executed. In February 1985, Leon and Bray met regarding additional acquisitions in the Albuquerque area. What resulted from this meeting is greatly in dispute. Leon claims that an oral agreement was reached to insure Leon's continued involvement in the Commons as sole leasing and sales agent and as sole manager of the Commons. For his services, he would receive a 4 percent ownership in the value of the property above a certain amount to be agreed upon and a 4 to 5 percent development services fee [2]. Conversely, Bray testified that no oral contract was formed, that any such agreement would have been premature because under the lease, it would not have access to the property for four years and that he and Leon only discussed the subject of additional acquisitions.

---

[1]. Wagner and Brown, a partnership, is an oil and gas production company located in Midland, Texas. It has a real estate department which engaged in purchasing raw land for investment purposes.

[2]. Leon also claimed that it was agreed that if W & B chose to have Leon Ltd. or a related entity develop the project, Leon would receive payment in the form of a development service fee. This fee allegedly would be calculated based on a certain percentage of the construction hard costs.

Later in 1985, Leon assisted W & B in the purchase of the LaMesa tract. In 1986, W & B, with the local help of Leon, was attempting to acquire two additional tracts in the area: the Monroe School site and an Exxon station. They also began taking preliminary steps to develop the property[3]. All necessary expenses incurred by Leon up to this date were covered by W & B pursuant to a letter agreement. On March 26, 1987, Leon wrote W & B suggesting the formation of a joint venture. After months of negotiations, the parties entered into three written agreements:

(1) An "Exclusive Agreement" (EA), dated March 22, 1988, in which W & B granted Leon the "exclusive right to negotiate real estate transactions...."[4] The agreement included a schedule of commissions to which Leon would be entitled for sales and leases of property in the Commons tracts. The agreement also provided that it and the schedule of commissions "contain the entire understanding and agreement of W & B and Leon and may not be amended or modified except by an instrument in writing signed by W & B and Leon."

(2) A "Development Consulting Agreement" (DCA), dated April 30, 1988, which outlined the consulting services Leon would provide on behalf of W & B to facilitate the initial phase of development on the Commons project.[5] For such services, W & B agreed to pay Leon a monthly fee of $8,812.50 plus necessary travel expenses.

(3) The "Albuquerque Commons Partnership Agreement" (ACPA), also dated April 30, 1988, was entered into to create Albuquerque Commons Partnership (ACP), a partnership between Albuquerque Uptown Partnership (AUP), and Albuquerque Uptown Partnership II (AUPII) (two Texas general partnerships the partners of which were Wagner, Brown, and Bray) and Leon Development Corporation.[6] One of the purposes (arguably the main purpose) of this partnership agreement was the development, for investment purposes, of the Commons.[7] This agreement also provided that it contained "the entire agreement by and among the parties and supersedes any prior understandings and agreements among them respecting the subject hereof[.]" AUP and AUPII were required to make cash contributions to their capital accounts for which they received interests of 86 percent and 10 percent, respectively. Leon was required to contribute its services for which it received a 4 percent interest. The Exclusive Agreement and the Development Consulting Agreement were assigned by W & B to ACP.

In late 1988, W & B became concerned about the market data Leon had provided in reference to the Commons. Furthermore, within five months of the execution of the written agreements, Leon approached W & B and demanded additional compensation. This resulted in an impasse and the breakdown of the relationship between Leon and W & B.

W & B, under the name of ACP, filed a lawsuit in Midland, Texas against Leon Ltd. on July 25, 1989. A second suit was filed in Midland but consolidated with the consent of the parties. Thereafter, Leon and his related entities filed two separate suits against W & B in New Mexico. Leon's claims were based on monies due under the alleged 1985 oral agreement and damages resulting from the anticipatory breach of W & B as to the

---

**3.** In early 1987, Leon, at Bray's request, furnished *pro forma* information, such as projections of lease income from a fully developed Commons. Leon's work also involved efforts to obtain entitlements from the city, including the approval of a master plan, the latter occurring on July 30, 1987.

**4.** Leon admitted in his appellate brief that portions of the alleged 1985 oral agreement were memorialized in this agreement.

**5.** Consulting services included the negotiation of contracts with, and in coordinating the services of, engineers, architects, attorneys, construction managers, and other outside consultants employed by W & B, as necessary participants in the development process.

**6.** Leon Development Corporation was created specifically for the Commons project.

**7.** Leon admitted in his brief to this Court, that this agreement memorialized the ownership portion of the alleged 1985 oral agreement.

written agreements.[8] The New Mexico lawsuit was stayed pending the outcome of the Texas lawsuits. By amended petitions, Leon Development Corporation and Richard J. Leon, individually, were added as party defendants in the Midland suit.

The case was tried to a jury over the course of several weeks. The issues submitted to the jury were those claims of W & B based on fraud, alter ego, and breach of the exclusive agreement. The jury was also allowed to consider Leon's counterclaims based on the 1985 oral agreement and *quantum meruit*[9]. Attorneys' fees were also an issue submitted to the jury.

At the conclusion of the trial, the jury determined that W & B was not entitled to rescind the Exclusive Agreement because Leon had complied with all terms regarding marketing the property. Furthermore, in answer to Question Nos. 13, 14, and 16, the jury found that there was a 1985 oral agreement, that Leon fully performed under its terms, and that the parties did not intend the 1988 written agreements to replace the oral agreement. The jury also found that Leon Development Corporation was the alter ego of Richard J. Leon but the jury concluded by awarding Leon 3 percent of the hard costs of construction and reasonable attorneys' fees.

Following the trial but prior to the entry of judgment, both parties filed motions to have portions of the jury's findings set aside as not supported by the evidence. Leon sought to have jury finding no. 15 set aside on the basis that the jury's calculation of hard costs were inadequate. W & B sought to have the findings relating to the 1985 oral agreement set aside on the theories of merger and statute of frauds. Additionally, W & B requested that the court declare the Exclusive Agreement terminated based on the willful misconduct of Leon; namely the filing of the *lis pendens*.

The trial court's final judgment declared the Exclusive Agreement terminated based

on the willful misconduct of Leon. Moreover, the court held that as a matter of law, W & B was entitled to a judgment notwithstanding the verdict (JNOV) as to the 1985 oral agreement. Finally, the court awarded W & B its attorneys' fees based on jury findings[10] on the subject against Leon Ltd., Leon Development Corporation, and Richard J. Leon.

Leon, in twenty points of error, attacks the trial court's entry of the JNOV favoring W & B.

*Points of Error Nos. One through Four*

Leon's first three points of error attack the trial court's entry of the JNOV in which the court disregarded the jury's findings as to question nos. 13, 14, and 16 relating to the 1985 oral agreement, and entered a final judgment rejecting Leon's claims based on that agreement. The fourth point challenges the court's disregard of the favorable jury findings on Leon's attorneys' fees.

*Standard of Review*

■ In Texas, the standard of review for the entry of a JNOV is essentially a "no evidence" standard, i.e. it is only proper if there is no evidence from which the jury could have made its findings. *Baker v. Int'l Record Syndicate, Inc.*, 812 S.W.2d 53, 56 (Tex.App.—Dallas 1991), *citing Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982). Furthermore, the evidence must be reviewed in the light most favorable to the jury finding, only considering the evidence and inferences that support the jury finding. *Id.* "Where there is more than a scintilla of competent evidence to support the jury's finding, then the judgment notwithstanding the verdict should be reversed." *Id.*

■ A defense which would bar suit, if established by the evidence as a matter of law, will properly support a JNOV. *Stout v. Clayton*, 674 S.W.2d 821, 826 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Accordingly,

---

8. Leon claimed that W & B's filing of the Texas suits constituted an anticipatory breach.

9. This included the issue of whether the 1985 agreement had merged into the written agreements.

10. The jury was asked to find and found attorneys' fees both for the W & B parties and for Leon Ltd. and Leon Development Corporation, but not for Richard J. Leon, individually.

our review will focus on the affirmative defenses raised by W & B to determine if such defenses defeat, as a matter of law, Leon's oral contract claim.

Leon claims that at a minimum, three items were agreed upon and became the subjects of W & B's contractual obligations under the 1985 oral agreement. These items are:

- Leon Ltd. or a related entity would be the sole leasing and sales agent for the Commons project;

- Leon Ltd. or a related entity would receive approximately a 4 percent ownership interest in the Commons project; and

- Leon Ltd. or a related entity would be the sole property manager of the Commons project.

The jury found that the parties entered into an oral agreement in 1985, and that Leon or a related entity would provide the above listed services. The jury also found that Leon provided all of the development and predevelopment services it had promised to provide. Finally, the jury concluded that the parties did not intend the three agreements executed in March and April of 1988 to replace the 1985 oral agreement.

Leon contends that development services were covered by the 1985 agreement but were not included within the scope of the consultation services provided for by the DCA (Development Consulting Agreement). He argues that there was ample evidence to support the jury findings in this regard. The trial court granted judgment notwithstanding the verdict thereby rejecting Leon's claims based on the alleged 1985 oral agreement. The issue before this Court is whether the record establishes, as a matter of law, a bar to recovery on the oral contract based on W & B's affirmative defenses. We conclude that because of the parol evidence rule, the doctrine of merger and the statute of frauds, the jury should not have been permitted to hear and consider evidence of the alleged 1985 oral agreement.

*Parol Evidence and The
Doctrine of Merger*

 The parol evidence rule is a rule of substantive contract law that denies efficacy to prior or contemporaneous expressions, whether written or oral, dealing with the same subject matter encompassed in the final written contract between the parties. *Pan American Bank of Brownsville v. Nowland*, 650 S.W.2d 879, 884 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The parol evidence rule does not preclude enforcement of a prior or contemporaneous agreement if it is collateral to and not inconsistent with the final agreement, as long as it does not vary or contradict the terms of the final agreement. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958). To be collateral, the prior or contemporaneous agreement must be one that the parties might naturally make separately and would not ordinarily be expected to embody or to integrate in the written agreement. *Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 680 (Tex.App.—Dallas 1984, no writ); *Leyendecker v. Strange*, 204 S.W.2d 845, 847 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.).

 The doctrine of "merger" acts as a corollary to the parol evidence rule in contract cases. Merger refers to the extinguishment of one contract by it absorption into another subsequent contract and is largely a matter of intention of the parties. *Smith v. Smith*, 794 S.W.2d 823, 827 (Tex.App.—Dallas 1990, no writ). Merger occurs when the same parties to a prior agreement subsequently enter into a written integrated agreement covering the same subject matter. *Boy Scouts of America v. Responsive Terminal Systems, Inc.*, 790 S.W.2d 738, 744 (Tex. App.—Dallas 1990, writ denied). If the terms of the second agreement are so inconsistent with those of the first agreement that both cannot stand, the second is conclusively presumed to have superseded the first. *Smith*, 794 S.W.2d at 828. Conversely, the prior agreement is not superseded or invalidated by a subsequent integrated agreement relating to the same subject matter if the first agreement is one that might naturally be made as a separate agreement or the

second merely modifies the first in some respect. *Id.*

█ The first item of the alleged 1985 oral agreement, i.e. the designation of Leon as sole leasing and sales agent, is clearly covered in the first numbered paragraph of the Exclusive Agreement which provided: *"Appointment of Agent:* W & B grants to Leon the exclusive right to negotiate real estate transactions, as defined in paragraph 2 of this Agreement ("Transactions"), for all or any part of the land and buildings now existing or to be built, whether owned or leased by W & B...." "Transactions" was then defined to include the lease or sale of any of the Commons property in which W & B had an interest. As a result, the sole leasing and sales agent provisions of the oral agreement were merged into the Exclusive Agreement and Leon's claim for any commissions due under the 1985 oral agreement for sales and leasing services is barred by the parol evidence rule.

Secondly, Leon's claim of a 4 percent ownership interest in the Commons project under the 1985 oral agreement was covered by a similar provision of the ACP agreement which named Leon Development Corporation as one of three partners with a 4 percentage interest in the partnership and its property (the Commons). Under the merger doctrine, the terms of the oral agreement relating to Leon's interest in the project were superseded by the similar provisions of the ACP agreement and the terms of the latter cannot be varied or contradicted by testimony concerning the former.

The final item Leon claims as a part of the 1985 oral agreement is the entitlement to be sole property manager of the Commons upon completion of the project. Although none of the three written agreements refer to property management services, the record contains a draft "property management agreement," prepared by Leon covering the exclusive management of the Commons property. This draft was sent to W & B on July 7, 1988 but apparently never signed. In any event, Leon could not become property manager of the project until at least a substantial portion of it was completed and ready for occupancy, a fact which not only had not occurred but will never occur under the auspices of the present parties.

We hold that the three written agreements entered into by the parties in March and April of 1988 were integrated agreements intended to cover not only the subject matter of the 1985 oral agreement but comprehensively the entire project from beginning through completion and beyond. These agreements include provisions relating to the same subject matter as covered in the 1985 oral agreement which cannot be considered as mere modifications. Thus, the alleged oral agreement was merged into the written agreements and the parol evidence rule should have prevented Leon from giving any testimony which would vary or contradict the provisions of the written agreements. At least two of the items which Leon claims obligated W & B under the 1985 oral agreement were specifically addressed by one or the other of the three written agreements.

*Statute of Frauds*

█ Additionally, W & B pled the statute of frauds as an affirmative defense to the alleged 1985 oral agreement. It also included the statute of frauds as one of the grounds in its motions for directed verdict and for JNOV. The Texas statute of frauds, codified as Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987), requires that any agreement which cannot be performed within one year from its date be in writing and signed by the party obligated to perform. Where the time for performance of a contract is uncertain and performance can conceivably occur within one year, the statute of frauds does not apply. *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 775 (Tex.1974). When no time for performance has been specified in the agreement, a reasonable time will be implied, considering the nature and purpose of the agreement, as determined by the surrounding circumstances, the situation of the parties, and the subject matter of the agreement. *Mercer v. C.A. Roberts Co.,* 570 F.2d 1232 (5th Cir.1978); *Krueger v. Young,* 406 S.W.2d 751, 756 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.).

Where, as here, the facts concerning the surrounding circumstances are undisputed, what constitutes a reasonable time becomes a question of law. *Id.* at 756. It is undisputed that under the terms of W & B's ground lease, the Catholic Church had the right to continue operating St. Pius X High School until the end of 1988. Furthermore, an Exxon service station was being operated on a part of the Church property under a long term lease between the Church and Exxon which would not terminate until around 1994. We therefore conclude that as a matter of law, it was impossible for the oral agreement to be performed within one year, a reasonable time under the undisputed facts being well beyond one year from February 1985 for the alleged contract to be performed.

Although sufficient partial performance of an oral agreement will sometimes relieve the performing party from the operation of the statute of frauds, *Vick v. McPherson*, 360 S.W.2d 866, 869 (Tex.Civ. App.—Amarillo 1962, writ ref'd n.r.e.), the partial performance must be unequivocally referable to the agreement and corroborative of the fact that an agreement had been made. *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ). While it may be argued that Leon partially performed under the 1985 oral agreement prior to the execution of the written agreements in 1988, it appears that Leon's pre–1988 performance involved leasing and acquisitions and preliminary development work leading up to the written contracts. The evidence indicates that he was paid and to be paid substantial commissions by the Church on its lease to W & B and by W & B on its purchase of the LaMesa tract. His efforts in behalf of W & B to acquire the Monroe School site was done in the expectation of receiving a commission. He was also reimbursed by W & B for necessary expenses incurred in connection with the preliminary development services. We conclude that such work was not unequivocally referable to the oral agreement. Moreover, inasmuch as we have previously concluded that the oral agreement was merged into the integrated 1988 agreements, Leon must look to those agreements and not to the extinguished oral agreement.

We overrule Leon's first, second, and third points of error, and because the fourth point relates to the Court's error in disregarding the jury's finding as to Leon's attorney's fees which is dependent on a ruling favorable to Leon on the first three points, the fourth point is overruled as well.

### Point of Error No. Five

Under his fifth point, Leon claims that the trial court erred by finding that Albuquerque Commons Partnership and its managing partner, Albuquerque Uptown Partnership (collectively referred to as W & B), at all times had the right to sell or otherwise dispose of all or part of the Commons property.[11] Leon contends that the trial court's finding (which amounts to a conclusion of law) was based on an interpretation of the parties' Partnership Agreement that was erroneous as a matter of law.

### Standard of Review

Conclusions of law are always reviewable. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). Incorrect conclusions of law will not require reversal, however, if the controlling findings of facts will support a correct legal theory. *Valencia v. Garza*, 765 S.W.2d 893, 898 (Tex.App.—San Antonio 1989, no writ).

Leon requested findings of fact and conclusions of law pursuant to TEX. R.CIV.P. 296. "Notice of Past Due Findings of Fact and Conclusions of Law" were filed with the clerk of the court on November 13, 1991. The trial court never filed findings of fact and conclusions of law.[12] Generally, fail-

---

11. Although this case was tried to a jury, the parties entered into a stipulation whereby they agreed that the trial would decide all matters of both law and fact as to the conduct of Leon Ltd., and the effect, if any, of such conduct, as to the Exclusive Agreement.

12. However, an unsigned, unfiled "draft" of Findings of Fact and Conclusions of Law is in the record.

ure by the trial court to file properly requested "findings" results in a presumption of harm and a reversal of the judgment unless the record affirmatively shows that no harm resulted from the trial court's failure to comply with Rule 296. *Cherne Industries, Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex. 1989).[13] However, inclusion of the court's findings of fact and conclusions of law as recitals in the judgment, as opposed to separate findings and conclusions, is an acceptable practice under the rules since it serves the underlying purpose of Rule 296. *Farr v. Sun World Savings Ass'n,* 810 S.W.2d 294, 298 (Tex.App.—El Paso 1991, no writ).

The trial court's final judgment stated in part:

IT IS THEREFORE ORDERED, ADJUDGED, DECREED AND DECLARED that the plaintiff, ALBUQUERQUE COMMONS PARTNERSHIP, and its managing partner, ALBUQUERQUE UPTOWN PARTNERSHIP, now have, and at all times have had, the right to sell or otherwise dispose of part or all of the ALBUQUERQUE COMMONS PARTNERSHIP interest in the subject real estate (described in Exhibit "A") in its present undeveloped state, or in a partially or fully developed state, solely at its discretion, without the consent of any defendant, and plaintiffs are granted their DECLARATORY JUDGMENT as prayed.

■ Although the judgment lacks some of the essential recitations of facts and conclusions of law to support it, Leon has not preserved any error connected with the trial court's failure to render findings and conclusions by Leon's failure to raise the issue by appropriate point of error. *Belcher v. Belcher,* 808 S.W.2d 202, 206 (Tex.App.—El Paso 1991, no writ).

### Contract Interpretation

■ The trial court held that in accordance with the Albuquerque Commons Partnership Agreement (ACPA), Albuquerque Uptown Partnership (AUP), as managing partner of the partnership had the right, solely at its discretion, to dispose of the partnership interest in the Commons property, whether developed or undeveloped. Whether ACPA had the right under the partnership agreement to dispose of the property is a question of interpretation. Whether a contract is ambiguous is a question of law for the court to determine from the surrounding circumstances at its inception. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). If the provision of a contract is so worded that it can be given a definite legal meaning, then it is not ambiguous and the court will construe the provision as a matter of law. *Coker,* 650 S.W.2d at 393. The controlling provision of the Albuquerque Commons Partnership Agreement states:

1.4 *Purpose.*

The character of the business and purpose of the Partnership shall be (i) to acquire, own and hold for investment the Property, (ii) to develop the Property (as hereinafter defined), (iii) to conduct activities as may be necessary, advisable or convenient to the development of the Property, including without limitation, to construct and/or provide for streets and utilities upon or to the Property, (iv) to borrow money and issue evidences of indebtedness and to secure the same by mortgages, deeds of trust, pledges or other liens or security interests, and (v) to conduct such other activities (*including the sale or other disposition of all or any part of the Property* ) and do any and all such other acts as may be necessary, incidental or convenient in connection with the foregoing. [Emphasis added].

This provision clearly states that the partnership has the authority to sell or dispose of all or part of the Commons property. Leon argues, however, that because subsection (v) is preceded by the conjunctive "and", rather than the disjunctive "or", this demonstrates a duty to develop the property prior to a sale. Leon confuses the "purposes" section with the "powers" section. Under Article IV of the agreement which gave AUP the exclusive managing authority over the partnership

**13.** The test for harm is whether under the particular circumstances, a party is required to guess the reason or reasons supporting the trial court's decision. *Sheldon Pollack Corp. v. Pioneer Concrete of Texas, Inc.,* 765 S.W.2d 843, 845 (Tex. App.—Dallas, 1989 writ denied).

business, Section 4.1.2(b) authorized and empowered AUP to "[e]ncumber or sell the fee or leasehold interest in the Property" and under subsection (h) "[s]ell, dispose of, trade, exchange, convey, quitclaim, ... upon such terms and conditions as the Managing Partner may deem advisable, appropriate, or convenient, any or all of the assets of the Partnership, including the Property[.]" Under Leon's proposed interpretation, the partnership would be required to fulfill each purpose before any part of the property could be sold or otherwise disposed of. Such an interpretation would render many provisions of the agreement meaningless and is therefore unreasonable. *Temple–Eastex Inc. v. Addison Bank,* 672 S.W.2d 793, 798 (Tex.1984). The purpose of a "purposes clause" of any business or charitable entity is to advise anyone who might be contributing to, investing in, or otherwise dealing with the entity as to the character and scope of its activities and the limitations thereon, not to create obligations and duties. In this case, the "and" merely links the purposes, in any one or all of which the partnership may legally engage.

Leon further points to a number of provisions in the partnership agreement that deal with development which establish that development was the predominant purpose of the agreement. While development may have been a purpose, it was only one of several purposes. Finally, Leon suggests that the phrase in subsection (v), "in connection with the foregoing", means that "sale is only contemplated *in connection with* the development of the property." We disagree. The phrase, "in connection with the foregoing," refers to each of the purposes, so that the partnership may "conduct such other activities (including the sale or other disposition of all or any part of the Property) and do any and all such other acts as may be necessary, incidental or convenient" when done "in connection with the foregoing," including the purpose, for instance, of acquiring, owning and holding the Commons property. Having considered the partnership agreement in its entirety, and each part with every other part

in an effort to achieve harmony, *Smart v. Tower Land and Investment Co.,* 597 S.W.2d 333 (Tex.1980), we agree with the trial court and hold that the managing partner, AUP, has the unqualified right to sell all or any part of the Commons property, whether developed or undeveloped, at any time at its sole discretion. Leon's fifth point of error is overruled.

*Points of Error Nos. Six through Nine*

In its sixth point of error, Leon contends that the court erred in its jury charge by giving the following instruction:

> You are instructed that the Court has determined that Plaintiff Albuquerque Uptown Partnership, as the managing partner of the Plaintiff Albuquerque Commons Partnership, has, and at all times has had, the right and power to sell or otherwise dispose of all or any part of the Commons property in an undeveloped or partially developed state whether with or without the consent of the Defendants.

Leon claims that this instruction was an impermissible comment on the weight of the evidence, an erroneous construction of the partnership agreement, and an unnecessary instruction resulting in the inadequate amount of damages returned by the jury pursuant to question no. 15.[14] Because this damage question was conditioned on favorable jury responses to the oral agreement questions which we have previously held to have been improper under the parol evidence, merger and statute of frauds defenses, it is unnecessary for us to address this point of error further. The sixth point of error is overruled.

Leon's seventh, eighth, and ninth points of error relate to damages, present and future, in connection with W & B's alleged breach of the 1985 oral agreement. Having previously determined that the agreement in question is unenforceable, we overrule these points.

---

**14.** *Question No. 15* What sum of money, if any, do you find to be equal to 3% of the hard costs of construction of the Commons project? Answer in dollars and cents, if any.

Answer: $12,633.71

*Points of Error Nos. Ten through Twelve*

In these points of error, essentially no evidence and insufficient evidence points, Leon attacks the court's disregard of the jury's finding that Leon did not fail to make reasonable efforts to sell the land in question and found instead that Leon had "committed willful misconduct and/or gross negligence" as grounds for canceling the Exclusive Agreement and terminating all rights granted to Leon by that agreement.

### Standard of Review

■■■ When presented with a "no evidence" or legal sufficiency challenge, this Court will consider the evidence and all reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America,* 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford,* 726 S.W.2d at 16; *Worsham Steel Co. v. Arias,* 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden,* 825 S.W.2d 772 (Tex.App.—El Paso 1992, no writ).

■■■ On the other hand, when a factual sufficiency challenge is advanced, this Court must examine all of the evidence. *Lofton v. Texas Brine Corporation,* 720 S.W.2d 804, 805 (Tex.1986). After considering and weighing all of the evidence, this Court may set aside a finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Since this Court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would clearly support a different result. *Clancy v. Zale Corporation,* 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

■■■ Prior to the submission of the charge to the jury, the parties stipulated that the question of the misconduct of Leon Ltd. in connection with the Exclusive Agreement would be submitted to the court rather than the jury. In its motion for a JNOV, W & B (ACP) requested the trial court to declare the Exclusive Agreement terminated because Leon Ltd. and Leon Development Corporation had breached their fiduciary relationship and were guilty of intentional misconduct by filing the *lis pendens* notice, which had the effect of making it impossible for Leon Ltd. to market the property, when its New Mexico pleadings showed on their face that no claim affecting title to the property was alleged. This in itself is a sufficient basis for the trial court to have found willful misconduct or gross negligence as a ground for terminating the agreement.

W & B claims further that filing of the *lis pendens* notice constituted an abuse of process because it precluded Leon from fulfilling its contractual duty to negotiate a sale of the property. Under the Exclusive Agreement between W & B and Leon Ltd., the latter was granted the exclusive right to negotiate certain real estate transactions. In return, Leon had to "use reasonable efforts to effectuate Transactions on the Property on behalf of W & B." The agreement also provided that it was to terminate on the happening of any one of several listed possibilities, including the "occurrence of gross negligence or intentional misconduct on the part of Leon."

The evidence showed that after Leon filed its lawsuit in New Mexico, it also filed a *lis pendens* notice in Bernalillo County, New Mexico (in which Albuquerque is located) on August 30, 1989 with one of the stated purposes of the suit being to enjoin ACP from selling any of the Commons property. Although all that would be required to support the termination of the agreement would be some evidence to support the finding of willful misconduct or gross negligence, we will review the evidence in this case to determine whether it would support a finding that Leon Ltd. committed an abuse of process by the filing of the notice of *lis pendens.*[15] Because

---

15. There is some question as to whether the evidence need even sufficiently establish a cause of action for abuse of process. All that is required for termination of the agreement is a finding of willful misconduct and/or gross negligence. However, for the purpose of this opinion,

the parties agreed in the Exclusive Agreement that New Mexico law would control, we must look to the substantive laws of that state to determine whether an abuse of process could have been found.

### Abuse of Process

■■■ The wrongful filing of a notice of *lis pendens* may support an action for abuse of process.[16] *Ruiz v. Varan*, 110 N.M. 478, 797 P.2d 267, 269 (1990). There are three elements to an abuse of process claim: (1) the existence of an ulterior motive; (2) an act in the use of process which would not be proper in the regular prosecution of the charge; and (3) the plaintiff must suffer damages, such as an unlawful interference with his property. *Id.*

■■ In this case, there was evidence from which the trial court could have concluded that all three elements had been satisfied. First, an ulterior motive was shown by the testimony of Richard Leon when he testified that he authorized the filing of the *lis pendens* to protect his interests in the property despite the fact that his suit was not one affecting title to the property. In this regard, he testified that the purpose of the *lis pendens* was to put the world on notice that a suit had been filed to prevent the sale of the property.

The second element of an abuse of process claim involves the use of process which would not be proper in the regular prosecution of the charge. *Ruiz*, 797 P.2d at 269. Under New Mexico law and practice, notice of *lis pendens* is only authorized in litigation affecting the title to real property, not where the ultimate recovery sought is money damages. *Title Guar. and Ins. Co. v. Campbell*, 106 N.M. 272, 742 P.2d 8, 13 (App.1987); N.M.Stat.Ann. § 38–1–14 (Michie 1978). Leon's pleadings in this case did not allege any cause of action affecting title to the Commons property. Leon did not question W & B's title and leasehold interest in the Commons property, only W & B's right to sell the property in an undeveloped state.

Leon had no interest in the property other than an interest (4 percent) which was owned by the partnership. *See, e.g., Citizens Bank of Clovis v. Williams*, 96 N.M. 373, 630 P.2d 1228, 1230 (1981) ("Under the New Mexico Uniform Partnership Act, an interest of a partner in the partnership is personal property and not real property, even if land is one of the assets.")

The final requirement, proof that the plaintiff suffered damages, also finds support in the evidence. The very purpose of a *lis pendens* notice is to put anyone interested in a particular tract of real property that there is a suit pending which may affect its title. Thus, the mere filing of the notice puts a cloud on the title, interfering with the owner's ability to obtain a loan, as in *Ruiz*, 797 P.2d at 269, or to market the property, as in this case.

We conclude that there was not only some evidence, but that the evidence was sufficient to support the court's conclusion that Leon had committed willful misconduct and/or gross negligence as grounds for terminating and canceling the Exclusive Agreement. Leon's tenth, eleventh, and twelfth points are overruled.

### Points of Error Nos. Thirteen through Fifteen

Under these points of error, Leon contends the trial court erred by rendering judgment on the jury finding that Leon Development Corporation was the *alter ego* of Richard J. Leon because there was no evidence or insufficient evidence to support that finding and by giving an improper and incomplete definition of *alter ego* in the accompanying instruction.

### Standard of Review

The standards for no evidence and insufficient evidence are the same as those set forth under Points of Error Nos. Ten through Twelve.

---

we will review the evidence to determine if it supports abuse of process cause of action.

**16.** The filing of a notice of Lis Pendens is governed by N.M.Stat.Ann. § 38–1–14 (Michie 1978).

The jury found, in answer to Question No. 12, that Leon Development Corporation, but not Leon Ltd., was the *alter ego* of Richard J. Leon. *Alter ego* is a basis in law for disregarding the corporate fiction when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986). *Alter ego* "is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry,* 721 S.W.2d at 272; *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990). The existence of one of the foregoing factors alone is not a sufficient basis for disregarding the corporate fiction. *Castleberry,* 721 S.W.2d at 276.

### No Evidence

The only evidence pointed to by W & B to support the jury finding that Leon Development Corporation (LDC) was the *alter ego* of Richard J. Leon is that he was the sole shareholder (individually and as a trustee) and the sole officer and employee of the corporation and probably the only director, and as such, he controlled it. There was no evidence of a failure to observe corporate formalities or of a commingling of corporate and personal property. There was also no evidence that the corporate entity was being used for personal purposes in a sense other than to limit Richard Leon's liability and to benefit him financially, not the kind of personal purposes meant in *Castleberry* and other cases. The evidence of *alter ego* offered by W & B, while it may amount to more than a scintilla on one of the factors, is legally insufficient to establish that fact. Moreover, the reason or reasons for disregarding the corporate fiction or for "piercing the corporate veil" are lacking. There was no showing that the corporate entity was being utilized for the purpose of perpetrating a fraud on W & B or other persons or for some illegal purpose. In fact, the evidence shows that W & B was thoroughly aware of the various Leon entities and their general purposes. There is no evidence that an injustice will result or that W & B will be unduly harmed by maintaining the corporate fiction. Under the "total dealings" concept of *Castleberry,* we conclude there is no evidence to support the jury finding of *alter ego.*

Leon's thirteenth point of error is sustained and on this point, the judgment against Richard J. Leon in his individual capacity will be reversed and rendered. Having thus disposed of that point of error, it is unnecessary to consider the factual sufficiency fourteenth point or the fifteenth point of error which complained of the accompanying instruction. However, we have examined the offending instruction in the light of the *Castleberry* opinion where the Supreme Court determined that an instruction was erroneous which emphasized that the jury could answer the *alter ego* question based on "the existence of one or more of these factors [the factors previously stated]" because it treated "the several alter ego factors as if each factor alone were [sic] a sufficient basis for disregarding the corporate fiction (without due regard for the separate corporate nature of the business, *or* whether such separate corporate nature ceased to exist, *or* if the corporate assets are dealt with by the individual as if owned by the individual, *or* if corporate formalities are not adhered to)." The Court concluded that "a proper alter ego instruction should include all the relevant factors and consider the total dealings of the corporation and the individual." 721 S.W.2d at 276. In the instant case, the instruction included nothing of the "one or more factors" language excoriated in *Castleberry* but rather twice admonished the jury that it must decide the *alter ego* question on the total dealings of the corporation and the individual. Therefore, we conclude that the instruction given was acceptable under *Castleberry.*

### Point of Error No. Sixteen

Richard Leon asserts in this point that the trial court erred by ruling, following a special appearance, that it had personal

jurisdiction over him in his individual capacity.

After hearing Richard Leon's special appearance and on May 4, 1990, the court ruled that Leon was individually amenable to the court's jurisdiction. He does not dispute the court's exercise of jurisdiction over his two corporations, Leon Ltd. and Leon Development Corporation. However, the evidence supports his claim that the only contacts he had with the forum state were in his capacity as an officer or director of the corporations.[17] W & B accepts this assertion and even acknowledges the general rule that an individual's contacts on behalf of a corporation do not create personal jurisdiction over the person. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir.1985). However, W & B cites the exception to the rule that personal jurisdiction is conferred over the corporation officer in situations where the court may disregard the corporate fiction on the theory of *alter ego*. *Stuart*, 772 F.2d at 1197.

■ Inasmuch as we have previously concluded that the evidence was legally insufficient to support a finding that Leon Development Corporation was the *alter ego* of Richard Leon, we hold as a matter of law that in the absence of that theory upon which to rely, Richard Leon, in his individual capacity, did not have any purposeful contacts with this state sufficient to confer personal jurisdiction over him.[18] Leon's sixteenth point of error is sustained.

### Points of Error Nos. Seventeen and Eighteen

Leon's seventeenth and eighteenth points of error raise a factual sufficiency challenge to the jury's findings with respect to reasonable attorneys' fees for the W & B plaintiffs and a legal challenge to the trial court's award of attorney's fees to the W & B plaintiffs in the amount so found by the jury. Leon claims that because no evidence was presented segregating the amount of attorney's fees attributable to W & B's declaratory judgment action from the amount attributable to the other causes of action, there can be no such award.

### Standard of Review

■ The standard of review for a factual sufficiency point of error has been previously set out. The determination of the amount to be awarded as a reasonable attorneys' fee is a question of fact to be determined by the trier of facts but the award must be supported by competent evidence. *Great American Reserve Insurance Company v. Britton*, 406 S.W.2d 901 (Tex.1966). Whether attorney's fees are authorized in a particular case is a question of law to be determined by the court. In an action for declaratory judgment, the court may award such reasonable and necessary attorney's fees as are determined to be equitable and just. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The decision of whether to award attorney's fees in a declaratory judgment action lies within the trial court's discretion and will not be reversed on appeal absent a clear abuse of that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985); *Fuqua v. Fuqua*, 750 S.W.2d 238, 246

---

17. It should be noted that Richard Leon was a resident of New Mexico, never lived in Texas, never maintained a banking account in Texas, had no business contacts in Texas and had no office agent or representative in Texas.

18. There is also an argument by W & B suggesting that personal jurisdiction exists because of the commission of a tort (fraud and misrepresentation) in Texas. Other than a general jurisdictional allegation that the cause of action against Leon, individually, arose out of tortious conduct committed by him in this state in whole or in part, the allegations and evidence relevant to the place of the tortious conduct are non-specific. When jurisdiction is based upon continuing and systematic activities or conduct rather than specific acts, jurisdiction is said to be general and the minimum contacts inquiry is broader and more demanding, requiring a showing of substantial activities in the forum state. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990); *Lujan v. Sun Exploration and Production Co.*, 798 S.W.2d 828, 832 (Tex.App.—Dallas 1990, writ denied). There was no showing that Leon, in his individual capacity, committed a tort in whole or in part in this state to confer specific jurisdiction on him or that he engaged in substantial, continuing activities, tortious or otherwise, in this state, certainly nowhere near a sufficient number of activities to warrant the exercise of personal jurisdiction based on general jurisdiction. TEX. CIV.PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1986).

(Tex.App.—Dallas 1988, writ denied). Where recoverable under the law, attorneys' fees awarded by a jury must be reasonable under the particular circumstances of the case and must bear a reasonable relationship to the amount in controversy. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 284 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *United States Steel Corp. v. Whitley*, 636 S.W.2d 465, 470 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.). Where a party who has pled several causes of action including a request for a declaratory judgment and for an award of attorney's fees generally, is awarded declaratory relief but denied other relief, he is entitled only to those attorney's fees that are attributable to the declaratory judgment action. *Canales v. Zapatero*, 773 S.W.2d 659, 662 (Tex.App.— San Antonio 1989, writ denied); *First Nat'l Bank of Commerce, Texas v. Anderson Ford–Lincoln–Mercury, Inc.*, 704 S.W.2d 83, 85 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

■ In the instant case, W & B brought not only an action for a declaratory judgment determining its right to sell Commons property under the partnership agreement but a number of other causes of action sounding both in contract and tort. In the JNOV awarded by the court, W & B was granted only the declaratory relief that it sought. During the trial, W & B's lead attorney testified at length concerning attorney's fees and the number of hours expended in the preparation and trial of the case, including an estimate of hours to be spent in completing the trial and on any possible appeals. His uncontroverted testimony was to the effect that the contractual claims and defenses, which included the action for declaratory relief, were so interwoven that they could not be segregated but that the tort claims could be segregated. The latter, he estimated, took approximately 25 percent of the W & B attorneys' time. He then testified as to the number of hours he expended in the case after applying a 25 percent reduction or discount to the total number of hours, arriving at a total of $263,250 for trial of the case

through judgment, based on his and his associates' hourly rates.

From our review of the record, we conclude that there was sufficient evidence to support the jury's findings, that the evidence concerning W & B's attorney's fees adequately segregated the amount attributable to the contract causes of action, including the action for declaratory relief and that the award of attorney's fees was not arbitrary or unreasonable and did not constitute an abuse of discretion. Leon's seventeenth and eighteenth points of error are overruled.

*Points of Error Nos. Nineteen and Twenty*

■ Leon's final two points of error attack the trial court's refusal to submit requested questions and an instruction relating to Leon's *prima facie* tort cause of action. In his pleadings, Leon alleged that W & B had committed *prima facie* torts: (1) by filing its action in Texas for declaratory relief which amounted to anticipatory repudiation of the Exclusive Agreement, and (2) by deciding to sell the Commons in an undeveloped state which breached the partnership agreement.

Although Texas does not recognize a cause of action for *prima facie* tort, New Mexico recently adopted this theory of recovery as discussed in the Restatement (Second) of Torts § 870 (1979).[19] *Schmitz v. Smentowski*, 109 N.M. 386, 785 P.2d 726 (1990). The elements of *prima facie* tort are:

1. An intentional, lawful act by defendant;
2. An intent to injure the plaintiff;
3. Injury to plaintiff; and
4. The absence of justification or insufficient justification for the defendant's acts.

*Schmitz*, 785 P.2d at 734–35. The New Mexico Supreme Court also held that where the plaintiff has alleged a *prima facie* tort in the alternative, if, at the close of evidence, plaintiff's proof is susceptible to submission under one of the traditional tort theories, it should be submitted under that cause and not under *prima facie* tort. *Schmitz*, 785 P.2d at 736.

---

19. The Exclusive Agreement provided that it was to be governed by and construed in accordance with the laws of New Mexico, whereas the Albuquerque Commons Partnership Agreement stated that it was to be construed and governed by the laws of Texas.

Aside from the fact that our holdings (that the managing partner has, under the partnership agreement, the unqualified right to sell the Commons property and that the filing of the *lis pendens* notice was a sufficient basis to justify termination of the Exclusive Agreement on the ground of willful misconduct) make it unnecessary to address these points of error, we find nothing in *Schmitz* or the Restatement (Second) of Torts which suggests that the *prima facie* tort theory should be applied to the filing of a lawsuit, whether for a declaratory judgment or other relief (we think for obvious reasons). We note in passing that Leon failed to plead that the act of filing suit was done with the primary or sole specific intent to injure the Leon interests, as required by *Schmitz*. Finally, Leon's references to evidence in the record claimed in its brief to support submission of the *prima facie* tort instruction and questions, fail as proof of any intent to injure the Leon interests or of the absence of justification for W & B's actions. Leon's nineteenth and twentieth points of error are overruled.

In summary, we overrule all points of error with the exception of the thirteenth and sixteenth points which we sustain. As a result, the judgment below is affirmed in all things as to Leon Ltd. and Leon Development Corporation, and reversed and rendered as to Richard J. Leon, individually, with all costs of appeal assessed against the Appellants, Leon Ltd. and Leon Development Corporation.