153 P.3d 46 (2006)
2007-NMCA-024
William F. McNEILL, Page McNeill, Marilyn Cates and The Black Trust, Plaintiffs-Appellants/Cross-Appellees,
v.
BURLINGTON RESOURCE OIL & GAS COMPANY, Defendant-Appellee/Cross-Appellant.
No. 25,469.
Court of Appeals of New Mexico.
December 4, 2006.
Certiorari Granted February 9, 2007.
*48 Law Offices of James P. Lyle, P.C., James P. Lyle, Albuquerque, NM Branch Law Firm, Turner W. Branch, Albuquerque, NM, for Appellants/Cross-Appellees.
Lynch Chappell & Alsup, P.C., Harper Estes, Steven C. Kiser, Midland, TX, Maddox & Holloman, P.C., Scotty Holloman, Hobbs, NM, for Appellee/Cross-Appellant.
Certiorari Granted, No. 30,162, February 9, 2007.

OPINION
BUSTAMANTE, Chief Judge.
{1} The Defendant-Appellee/Cross-Appellant filed a motion for rehearing. This Court has considered the motion and the motion is hereby denied. The opinion filed in this case on October 26, 2006, is withdrawn and the following opinion is substituted therefor.
{2} This case requires us to determine the correct measure of damages for injury to real property. We conclude that the correct measure of damages depends on whether the injury is permanent or temporary, which is an issue of fact for the jury. Where the injury is permanent, the correct measure of damages is the diminution in the fair market value of the property. Conversely, where the injury is temporary, the correct measure of damages is the cost of repair or remediation, as long as the cost is less than the diminution in fair market value. Furthermore, the Plaintiff should be allowed to present evidence on the cost of repair or remediation in either situation because such evidence will normally be relevant in both cases. Finally, when determining the diminution in value of damaged property, the jury should consider the decrease in value to the entire property, not just the damaged portion of land. We therefore reverse and remand for proceedings consistent with this opinion.
*49 BACKGROUND
{3} Plaintiffs are the owners of the surface rights of the McNeill Ranch, a cattle ranch in Lea County, New Mexico. The McNeill Ranch covers approximately 31,000 acres over two large tracts. Defendant, Burlington Resource Oil and Gas Co., is the former oil, gas, and mineral lessee under a portion of Plaintiffs' property. Defendant's predecessor-in-interest owned and operated an oil well on a tract of land on the McNeill Ranch, known as Tract 2, since approximately 1950. Standard practice when operating an oil well is to dig a pit in the ground in the immediate vicinity of the oil well in order to contain waste by-products of oil production. These by-products, known as "produced water," may contain many types of petroleum, hydrocarbons, salt water, and other contaminants.
{4} The oil well ceased production in 1986, and in 1992 Defendant closed the pit. After closure of the pit, the surface area looked like any other abandoned oil field operation, and it was not evident to the untrained eye that an old pit was buried at the site. In 1996, Plaintiff William McNeill received information leading him to suspect that there might be an old pit buried under Tract 2 of his ranch. After learning of the pit and possible contamination, Plaintiff William McNeill contacted Defendant and asked for the contaminated materials to be removed. Defendant did not remove or replace the contaminated materials. Although there have been no additional deposits into the pit since 1986, the existing contaminants had been accumulating on the property since 1950 and will not disappear or abate on their own. Instead, the contaminants will require removal and replacement of a large amount of contaminated soil. It is not disputed that Defendant is the successor-in-interest to the companies that drilled, operated, plugged, and cleaned up this well and the associated pit.
{5} Plaintiffs filed suit on June 1, 1999, then filed a second amended complaint on January 13, 2000, alleging negligence, trespass, and private nuisance for contamination of their property resulting from Defendant's operation of an oil well. Specifically, Plaintiffs allege that Defendant's failure to properly close the associated pit resulted in subsurface contamination of their property. Furthermore, Plaintiffs assert that the contamination has affected the water supply in the area and that, as a result, Plaintiffs' cattle will not drink the water.
{6} Defendant filed an answer to the second amended complaint on September 28, 2004, raising the defenses of statute of limitations, estoppel, waiver, and release, among others. The district court ruled, in response to a motion in limine filed by Defendant, that the appropriate measure of damages in the case is diminution in value, if any, to the fair market value of the property involved. The district court further ruled that Plaintiffs' experts could only testify as to the applicable standard for permanent damage to real property, which the court determined to be the diminution in the fair market value of the land involved, and that Plaintiffs' experts could not testify regarding the remediation costs. The case went to trial before a jury. At the close of the evidence, Defendant moved for a directed verdict on the private nuisance claim, arguing that the New Mexico Supreme Court declined to adopt private nuisance as a theory of recovery. The district court granted the motion for directed verdict. The jury then returned a verdict for Plaintiffs on the theories of negligence and trespass and awarded damages in the amount of $135,000. Plaintiffs appeal on the issues of the jury instructions for damages and private nuisance. Defendant cross-appeals, raising several other issues.
DISCUSSION
{7} Plaintiffs argue that the district court erred in ruling that the injury was permanent, thus preventing the jury from considering whether the cost of removal of the contaminated material exceeded the value of the property, as well as stigma damages. Plaintiffs also argue that the district court erred in directing a verdict in favor of Defendant on the private nuisance claim. Defendant cross-appeals, raising three issues: (1) all claims for surface damages have been waived by deed, (2) the Black Trust Plaintiffs do not own the causes of action they have asserted, and (3) Plaintiffs' claims are barred by the statute of limitations. We address Defendant's *50 issues on cross-appeal first, because if there is merit to any of Defendant's contentions, Plaintiffs' claims on appeal are moot.
DEFENDANT'S ARGUMENTS ON CROSS-APPEAL
1. Estoppel by Deed or Waiver
{8} We address this issue summarily by noting that Defendant failed to raise it in a timely manner. Defendant raised the issue of estoppel by deed or waiver for the first time as an affirmative defense in an answer to Plaintiffs' second amended complaint, which was filed on January 13, 2000. Defendant filed its answer to the second amended complaint on September 28, 2004, more than four and a half years after Plaintiffs filed the second amended complaint. Defendant therefore waived the defense of estoppel by deed or waiver by operation of Rule 1-012(A) (providing that a defendant shall serve an answer within thirty days of service of the complaint). Alternatively, if we view the untimely answer to the second amended complaint as an attempt to amend the original answer, Defendant failed to comply with the deadlines applicable to the amendment of pleadings, which are required by Rule 1-015(A) NMRA.
{9} Rule 1-015(A) sets forth the relevant deadlines for amendments to pleadings and states that, where such deadlines have passed, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Id. Defendant failed to move for leave to amend the original answer, as required by Rule 1-015(A). Moreover, Defendant does not challenge the district court's pretrial ruling precluding Defendant from presenting evidence on the issue of estoppel by deed or waiver. Rather, Defendant asserts that the district court considered the issue anew when Defendant reintroduced it by motion for directed verdict and during Defendant's post-trial motion for judgment as a matter of law and alternative motion to alter or amend the judgment. This argument is without merit.
{10} The district court summarily denied each of Defendant's motions regarding the defense of estoppel by deed or waiver without explaining its reasons for doing so. Defendant asserts that the district court, despite its pretrial ruling, agreed to weigh the merits of Defendant's legal argument at a later time and that the court did so in the process of denying Defendant's motions on the issue. However, the record is far from clear on this point and we can find no indication that the court ever limited or vacated its prior ruling. Without more, we must assume that the district court was simply upholding the prior ruling by denying the motions.
{11} In sum, we decline to entertain Defendant's appeal on the estoppel by deed or waiver issue because to do so would frustrate the purpose of our Rules of Civil Procedure. Holding otherwise would allow any litigant to "sneak in" an appropriately barred claim or defense by simply reintroducing the issue by motion at trial and, if the motion is denied, appealing the denial of the motion. We therefore conclude that the affirmative defense of estoppel by deed or waiver in the answer was not properly raised, and thus will not be addressed on appeal. We next turn to Defendant's second claim of error on cross-appeal.
2. The Black Trust Plaintiffs Own the Causes of Action
{12} Defendant next argues that the Black Trust Plaintiffs do not own the causes of action in this case because the language in the quitclaim deed by which the property was conveyed to them was insufficient to convey personal causes of action. Defendant moved for a directed verdict on the issue, contending that Plaintiffs presented no evidence of title or ownership of the property. Defendant asserts that the language in the quitclaim deed to the Black Trust states that the grantor quitclaims all of his or her "right, title, and interest" in the property to the Black Trust, but fails to convey any personal causes of action, such as the claims at issue in this case. Defendant relies on a series of Texas cases for the proposition that a cause of action for injury to real property accrues when the injury is committed, and is a personal right belonging to the person who owns the property at the time of the injury. See, e.g., Exxon Corp. v. Pluff, 94 S.W.3d 22, 27 (Tex.App.2002); Lay v. Aetna Ins. Co., 599 *51 S.W.2d 684, 686 (Tex.Civ.App.1980). The district court denied Defendant's motion for a directed verdict.
{13} "[A] directed verdict is appropriate only when there are no issues of fact to be presented to a jury." Hedicke v. Gunville, 2003-NMCA-032, ¶ 9, 133 N.M. 335, 62 P.3d 1217. In considering a directed verdict motion, a district court considers all the evidence, "and any conflicts in the evidence or reasonable interpretations of it are viewed in favor of the party resisting the directed verdict." Id. The district court's ruling on the motion is a question of law, and we review questions of law de novo. Id.
{14} The district court properly denied Defendant's motion for a directed verdict. In New Mexico, a cause of action arises not necessarily at the time of injury, but rather at the time a plaintiff knows or should have known of the claims. See NMSA 1978, § 37-1-7 (1880) (stating "the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved"). This is referred to as the "discovery rule."
{15} The jury found that Plaintiffs knew or should have known of the cause of action on or after July 1, 1995. Plaintiffs presented testimony at trial that they discovered the contaminated pit in 1997, two years before the lawsuit was filed. The Black Trust received its conveyance of interest in the property in 1997 and evidence of the conveyance was admitted at trial. Applying the discovery rule to the evidence presented at trial, the causes of action accrued at the time the injury or trespass to the land was discovered, which according to Plaintiffs was in 1997. Defendant fails to point to any persuasive evidence indicating otherwise. Plaintiffs' evidence established that the grantor conveyed the land to the Black Trust by quitclaim deed, the Black Trust thereby acquiring all right, title, and interest in the land that the grantor owned. Thus, the Black Trust Plaintiffs own the causes of action because the causes of action accrued, or was "discovered," after the conveyance of the property to them. Defendant's contentions otherwise are without merit.
3. Statute of Limitations
{16} Finally, Defendant argues that Plaintiffs' claims are barred by the statute of limitations. The jury received a special interrogatory on this issue that required the jury to determine when the Plaintiffs knew or reasonably should have known of the causes of action. Since the issue was presented to the jury to determine as a factual issue, we review the jury's finding for substantial evidence. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." Landavazo v. Sanchez, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In reviewing for substantial evidence, "the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." Las Cruces Prof'l Fire Fighters v. City of Las Cruces, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." Id.
{17} Substantial evidence supports the jury's determination. The jury found that only after July 1, 1995, did Plaintiffs or their predecessors-in-interest know, or in the exercise of reasonable diligence they should have known, of their causes of action. At trial, Plaintiffs presented testimony from Plaintiff William McNeill stating that he became aware of a problem in 1997. This testimony was sufficient evidence for the jury to have found that Plaintiffs knew or should have known of the causes of action on or after July 1, 1995. Thus, when Plaintiffs filed suit on June 1, 1999, they did so within the four year statute of limitations under NMSA 1978, § 37-1-4 (1880). Concluding that all of the arguments Defendant raises on cross appeal fail, we now turn to the issues Plaintiffs raise on appeal.
PLAINTIFFS' ARGUMENTS ON APPEAL
1. Jury Instructions and Damages
{18} Plaintiffs contend that the district court erred in prohibiting the jury from *52 hearing evidence on the cost of remediation or repair of the property. Prior to trial, the district court ruled that the damages in this case were permanent, and thus the proper measure of damages was the difference between the fair market value of the land before the injury and the fair market value after the injury. The district court expressly prohibited Plaintiffs from presenting to the jury any evidence of the cost of repair or remediation. Plaintiffs assert that the issue of whether cost of repair or diminution in value is the proper measure of damages is determined by the characterization of the injury as temporary or permanent, which is a question of fact for the jury. According to Plaintiffs, if the cost of repair or remediation is less than the diminution in fair market value, then the cost of repair is the correct measure of damages. Plaintiffs also argue that the district court erred by instructing the jury to consider only damage to such land that was actually injured, rather than the diminution in value of the entire property, which limited the award of damages.
STANDARD OF REVIEW
{19} Whether the district court erred in determining, as a matter of law, that the injury was permanent and the jury instructions should be limited to diminution in value is a question of law, which we review de novo. Sitterly v. Matthews, 2000-NMCA-037, ¶ 22, 129 N.M. 134, 2 P.3d 871 (when the matter to be decided is a question of law, the standard of review is de novo); Sowder v. Sowder, 1999-NMCA-058, ¶ 7, 127 N.M. 114, 977 P.2d 1034 (same). To the extent we are required to review for error in the Uniform Jury Instructions, we note that the Court of Appeals may consider error in the Uniform Jury Instructions, except that it may not overrule "those instructions that have been considered by [the Supreme Court] in actual cases and controversies that are controlling precedent." State v. Wilson, 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994). Furthermore, we note that if a legal theory is supported by the evidence, a party is entitled to have the jury instructed on that theory. Thompson Drilling, Inc. v. Romig, 105 N.M. 701, 705, 736 P.2d 979, 983 (1987). However, "[i]t is not error to deny requested instructions when the instructions given adequately cover the law to be applied." Kirk Co. v. Ashcraft, 101 N.M. 462, 466, 684 P.2d 1127, 1131 (1984). A civil case will not be reversed due to error in jury instructions unless the result is fundamentally unjust. Kennedy v. Dexter Consol. Sch., 2000-NMSC-025, ¶ 27, 129 N.M. 436, 10 P.3d 115. Furthermore, the complaining party must be able to show that the erroneous instructions were prejudicial. Id.
1. The correct measure of damages for injury to real property depends on whether the injury is permanent or temporary
{20} The objective in awarding damages, whether in tort for physical harm to property or in breach of contract or warranty, is to place the plaintiffs in the same financial position regarding the property as they would have been in had there been no damage to the property in the first place. Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. 436, 443, 891 P.2d 1190, 1197 (1995). Our Uniform Jury Instructions provide for the measure of damages to real property as follows: "You shall determine what was the value of the property immediately before the occurrence and immediately after the occurrence. The difference between these two figures is the legal measure of damages to real property." UJI 13-1819 NMRA. The UJI is silent with respect to any distinction between permanent and temporary damages. However, the committee commentary to UJI 13-1819 cites to three cases for the proposition that "[t]he Supreme Court of New Mexico has recognized that under certain circumstances the measure of damages to real property may vary."
{21} In Snider v. Town of Silver City, 56 N.M. 603, 247 P.2d 178 (1952), the Court upheld a measure of damages based on the cost of restoration of a cabin complex that was destroyed by an explosion. The Court allowed the cost of repair and restoration of the damaged building as the appropriate measure of damages. Id. at 614, 247 P.2d at 185. Thigpen v. Skousen & Hise, 64 N.M. 290, 327 P.2d 802 (1958), addressed whether strict liability could be imposed for damage to buildings that resulted from blasting operations. *53 The Court upheld an award of damages for actual damage to the building from fragments and debris hitting the building, as well as damage from shock waves passing through the building. Id. at 291-92, 327 P.2d at 803. Finally, in Duke City Lumber Co. v. Terrel, 88 N.M. 299, 540 P.2d 229 (1975) the Court determined "that the difference between the before and after . . . market values of a business enterprise correctly measure[d] the damages resulting from the destruction of or injury to the enterprise." Id. at 302, 540 P.2d at 232 (internal quotation marks omitted). However, the Court also stated that this method of calculating damages "was [not] the only method by which the claimed damages could properly have been measured." Id. Unfortunately, the Court did not provide any further explanation of what other methods might be appropriate.
{22} None of the three cases discussed in the committee commentary for the proposition that damages to real property may vary involve damage to the surface or subsurface of real property. Instead, the cases involve damage to buildings or to businesses in terms of economic losses. We therefore do not find these cases instructive on the issue of when a court should deviate from the standard instruction on damages to real property. See Cress v. Scott, 117 N.M. 3, 5-6, 868 P.2d 648, 650-51 (1994) (noting that committee comments to UJIs are not the law of New Mexico). However, other case law not cited in the commentary seems to indicate that there may be alternate methods of calculating damages to real property, depending on whether they are permanent or temporary.
{23} The cases of Amoco Production Co. v. Carter Farms Co., 103 N.M. 117, 703 P.2d 894 (1985) ("Carter Farms") and Ruiz v. Varan, 110 N.M. 478, 797 P.2d 267 (1990), although not cited in the committee commentary, are instructive. Both parties in the present matter rely upon Carter Farms, and the case is controlling precedent. Carter Farms addressed, among other things, the issue of the proper measure of damages for injury to real property. 103 N.M. at 118, 703 P.2d at 895. Without any mention of the UJI prescribing diminution in fair market value as the proper measure of damages to real property, the Court instead stated the following as the proper measure of damages to real property:
Damage to the surface estate by the owner of the mineral estate is founded upon the unreasonable, excessive or negligent use of the surface estate. The measure of damages under a negligence theory of liability for permanent damage to real property is the difference between the fair market value of the land prior to the injury and the fair market value of the land after the full extent of the injury has been determined. When the actions of the owner of the mineral estate have rendered the surface totally unusable for a period of time, then the damages are determined by the land's rental value for that same period. Where temporary damage results to the surface estate, but it can be repaired, then the damages are the cost of repair or restoration if the cost of restoration does not exceed the value of the property.
Id. at 120-21, 703 P.2d at 897-98 (citations omitted). This passage in Carter Farms indicates that the measure of damages for injury to real property depends on whether the damage is permanent or temporary.
{24} However, in Ruiz, our Supreme Court again relied on the general rule for damages to real property, as stated in UJI 13-1802 NMRA and 13-1819. Ruiz, 110 N.M. at 481, 797 P.2d at 270. The Court stated that UJI 13-1802, which is the instruction concerning the general measure of damages, "is intended to provide for an `amount of money which will reasonably and fairly compensate' for an injury as established by evidence." Ruiz, 110 N.M. at 481, 797 P.2d at 270. This amount is ordinarily found "by instructing the jury to determine what was the value of the property immediately before the occurrence and immediately after the occurrence. The difference between these two figures is the legal measure of damages to real property." Id. (internal quotation marks and citations omitted). However, the Court went on to state that "nothing in our case law precludes substituting a `lost use' measure for the standard `before and after' measure set out in UJI 13-1819 where such a *54 measure represents fair and reasonable compensation." Ruiz, 110 N.M. at 481, 797 P.2d at 270. Thus, the proper measure of damages is not constrained by the guidelines set forth in UJI 13-1819, but rather will "depend[] on the proof offered to establish and quantify the harm." Ruiz, 110 N.M. at 481, 797 P.2d at 270.
{25} The existence of a single UJI on damage to real property indicating one measure of damages, contrasted with case law indicating that the measure of damage to real property depends on whether the damage is temporary or permanent, clearly illustrates the difficulty in the present case in determining the correct measure of damages. We are bound by the precedent in Carter Farms and therefore conclude that the measure of damages for injury to real property depends on whether the injury is temporary or permanent. As stated in Carter Farms, the measure of damages for permanent injury is the diminution in the fair market value of the property. This is the general measure of damages, as stated in UJI 13-1819. If the damage to real property is temporary, the measure of damages is the cost of repair or remediation, so long as this cost is less than the diminution in fair market value. But the difficulty does not end there. Having made the determination of the correct measure of damages, we must now determine whether the issue of damages being temporary or permanent is a question for the jury, or one for the judge to decide as a matter of law.
2. The determination of whether an injury to real property is permanent or temporary is a question of fact to be decided by the jury
{26} In the present case, the district court decided as a matter of law that the damages were permanent. Plaintiffs argue that whether damages are permanent or temporary is an issue of fact to be decided by the jury, not as a matter of law by the judge. Plaintiffs also contend that the district court erred by limiting the evidence to the fair market value of the property, thus prohibiting the introduction of evidence on the cost of repair or remediation. We agree.
{27} The holding in Carter Farms supports Plaintiffs' contention that the measure of damages for injuries to real property differs depending on whether the damage is permanent or temporary. We recognize, however, that the distinction between permanent and temporary damages is often problematic. Temporary damages are generally defined as damages that can be remedied, removed, or abated within a reasonable period and at a reasonable expense. Morsey v. Chevron, USA, Inc., 94 F.3d 1470, 1476 (10th Cir.1996). "Inherent in the concept of temporary damages is an element of feasibility, comprised of (but not limited to) both economic and temporal concerns." Id.
{28} In contrast, permanent damages are defined as those damages caused by an injury that is fixed and where the property will always remain subject to that injury. Id. "Permanent damages are damages for the entire injury done  past, present, and prospective  and generally speaking those which are practically irremediable." Id. Nevertheless, "the distinction between permanent and temporary injuries has not always been considered helpful, because the classification of the injury often turns on whether the cost of restoration is more than the value of the property." 22 Am.Jur.2d Damages, § 257 (2006). Another commentator suggests that:
[P]ermanency is a word of art that stands for policy concerns rather than a simple physical description; the damages appear to be as permanent in some of the cases allowing repair-costs as they are in the cases limiting the damages to the diminution measure. . . . [C]ourts appear to describe harm to land as permanent in this sense when the cost of repair would be likely to exceed the diminished value by a substantial margin.
1 Dan B. Dobbs, Law of Remedies § 5.2(2) at 717 (2d ed.1993). In other words, the determination of whether an injury is permanent often depends on whether the cost of repair exceeds the diminution in fair market value. It is true that even with a temporary injury, if the cost of repair is greater than the diminution in value, the plaintiff will only receive the latter. This rule makes sense *55 given the purpose of awarding damages, which is to fully compensate a plaintiff, or restore plaintiff to his rightful position. Allowing a recovery that is greater than the value of a plaintiff's loss would put the plaintiff in a better position than he or she had been in before the injury, which is never the purpose of compensatory damages. See Camino Real Mobile Home Park P'ship, 119 N.M. at 444, 891 P.2d at 1198 (noting that if the cost of repair or replacement involves economic waste, the measure of damages is the difference between the reasonable market value of the property as warranted and the reasonable market value in the actual condition).
{29} In light of the authority cited above, we conclude that the determination of whether damage to real property is permanent or temporary is an issue of fact for the jury to decide. See Santa Fe S. Ry., Inc. v. Baucis Ltd. Liab. Co., 1998-NMCA-002, ¶ 18, 124 N.M. 430, 952 P.2d 31 (noting that issues of fact are for the jury to decide); Silva v. State, 106 N.M. 472, 476, 745 P.2d 380, 384 (1987) (same). In making this determination, the jury should take into account the nature and extent of the injury and, in turn, the reasonableness of awarding the cost of repair versus the diminution in value. Furthermore, even where the jury has determined that the injury is permanent, the plaintiff should not be precluded from presenting evidence on the cost of repair or remediation, as such evidence will often have a significant relationship to the diminution in value of the land. See 1 Dobbs, supra at 720 ("The diminution measure . . . should not forbid introduction of evidence as to repair costs, which are ordinarily at least some evidence as to diminished value.").
{30} Thus, in the present case, the district court erred in making the determination, as a matter of law, that the damages to Plaintiffs' real property were permanent and by precluding Plaintiffs from presenting evidence on the cost of repair or remediation. Proper jury instructions would include an instruction on permanent versus temporary damages, as well as the cost of repair or remediation versus the diminution in fair market value.
{31} We note that the Dobbs treatise uses the terms "diminished value" and "diminution in value" interchangeably, although these terms arguably have distinct meanings. We have elected to use "diminution in value" and clarify that this term means the amount representing the difference between the fair market value of the property before the occurrence of the harm and the fair market value of the property after the harm occurred.
{32} We also note that the measure of damages we adopt here is not rigid or inflexible. As the cited commentators note, there may be unusual or exceptional circumstances warranting an award of the cost of repairs even when that amount exceeds the property's diminution in value. See, e.g., Dobbs, supra at 715 (noting that in some cases "costly repairs might be justified even though the land's value has been reduced only slightly," and observing that "[i]n many instances the plaintiff is using land in a way that suits the plaintiff very well but that does not maximize its economic value"); Restatement (Second) of Torts, § 929 cmt. b (explaining that, where repair or restoration costs exceed the land's diminution in value, damages are measured by the diminution in value "unless there is a reason personal to the owner for restoring the original condition"). We are confident that the district courts can recognize these exceptional circumstances and craft appropriate jury instructions in such instances.
{33} We now address Plaintiffs' contention that the district court erred by instructing the jury to consider only damage to such land that was actually injured, rather than the diminution in value of the entire property.
3. The measure of damages for permanent injury to real property should include diminution in value of the entire property, not just the portion of land that is physically injured
{34} Plaintiffs assert that, even if diminution in fair market value were the correct measure of damages, the district court erred in instructing the jury that it could only consider the decrease in value of the land actually injured and not the entire ranch. *56 The jury was instructed that, "[i]n awarding damages, you may consider only so much of the land as may have been actually physically injured by any negligence you may have found." According to Plaintiffs, the jury should have been able to consider the diminution in value of the entire property. We agree.
{35} We find the Restatement (Second) of Torts instructive on this point. In discussing damages for harm to land from "past invasions," the Restatement notes that damages for harm to land include compensation for the difference in value of the land before the harm and the value after the harm, or in an appropriate case, the cost of restoration. Restatement (Second) of Torts § 929 (1979). The Restatement goes on to note that, when the measure of damages is the difference in fair market value, "[i]f only a portion of a tract of land has been directly harmed, the diminished value of the entire tract is considered." Id. cmt. a. (Emphasis added.)
{36} The diminution in value of the entire property provides the correct measure of damages for permanent injury to real property. If the injury is only to a small portion of land within the property, as in the present case, then the diminution in value of the entire property will take into account the degree or amount of injury. Under these circumstances, evidence regarding cost of repair may be quite helpful in determining the diminution in value of the entire property, since a reasonable prospective buyer will want to subtract the cost of repair from the sale price of the land. The same is true regarding stigma damages; the decrease in market value of the property necessarily takes into account any stigma associated with the property as a result of the injury. In other words, to the extent stigma is an issue, it will be reflected in the decrease in fair market value of the property.
{37} In sum, we hold that the question of whether the injury to real property is temporary or permanent is an issue of fact for the jury to decide. If the injury is permanent, the correct measure of damages is the diminution in fair market value of the entire property. If the injury is temporary, then the correct measure of damages is the cost of repair or remediation. If the cost of repair or remediation is greater than the diminution in fair market value, then the latter is the correct measure of damages. Finally, even where the jury finds that the injury is permanent and thus the correct measure of damages is diminution value, evidence regarding cost of repair or remediation should be allowed. We now turn to Plaintiffs' claim of private nuisance.
PRIVATE NUISANCE
{38} Plaintiffs asserted a claim for private nuisance in their amended complaint. Plaintiffs allege that the spilled or allowed flow of oil onto Plaintiffs' lands resulted in contamination of the land, and that such conduct was unreasonable and interfered with their use and enjoyment of the land. According to Plaintiffs, the nuisance resulted in diminution in the value of the land and caused Plaintiffs annoyance and inconvenience.
{39} We find the decision in Carter Farms determinative on Plaintiffs' private nuisance claim. Although the jury awarded damages based on a finding of private nuisance in Carter Farms, the Court noted that such a theory had not been pled in the original complaint. Carter Farms, 103 N.M. at 119, 703 P.2d at 896. The Court declined to adopt private nuisance as a theory of recovery in Carter Farms, noting that "state courts have rarely utilized a private nuisance theory since recovery ordinarily can be based upon standard theories of negligence." Id. at 120, 703 P.2d at 897 (internal citation omitted). Although the parties disagree as to whether Carter Farms essentially precluded private nuisance as a theory of recovery in New Mexico, we believe the Court declined to adopt the theory of private nuisance in Carter Farms because it was not pled by the plaintiffs. To the extent a plaintiff can recover under other theories such as negligence, private nuisance is rarely utilized. We thus interpret the Court's decision in Carter Farms to allow recovery for private nuisance in circumstances where private nuisance has been properly pled by the plaintiffs *57 and other theories of recovery are not available.
{40} In the case before us, Plaintiffs did plead private nuisance in their amended complaint. However, other theories of recovery, including standard negligence and trespass, were available to Plaintiffs. Therefore, applying Carter Farms, we conclude that the district court did not err in disallowing Plaintiffs' claim of private nuisance to go to the jury. Furthermore, we note that in this case, even without the theory of private nuisance available, the damages available to Plaintiffs are the same.
CONCLUSION
{41} We reverse and remand for proceedings consistent with this opinion.
{42} IT IS SO ORDERED.
WE CONCUR: A. JOSEPH ALARID and CYNTHIA A. FRY, Judges.